UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMAR YOUNG,<br><br>          Plaintiff,<br><br>     v.<br><br>SGT. STENGER, et al.,<br><br>          Defendants. | Case No. 21-cv-08131-DMR (PR)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; STAYING ACTION; AND REFERRING FOR SETTLEMENT PROCEEDINGS** |

## I.   INTRODUCTION

This is a civil rights case filed by self-represented Plaintiff Lamar Young pursuant to 42 U.S.C. § 1983.  The operative complaint is the amended complaint.  Dkt. 15.  He seeks monetary and punitive damages as well as declaratory and injunctive relief.  *Id.* at 4-5.[1]

Plaintiff alleges that the following Defendants employed by the Antioch Police Department ("APD") used excessive force against him during an interrogation on October 29, 2020 in West County Detention Center in Contra Costa County: Sergeant James Stenger; and Detectives Kelly Inabnett, Mellone, and Bledsoe.[2]  *See id.*  Plaintiff asserts that during the interrogation, he refused Defendants' request that he put on a mask[3] in order for them to take a photograph of him wearing it.[4]  Plaintiff alleges that when he refused to put on the mask, Stenger, Mellone and Bledsoe forced

---

[1] Page number citations refer to those assigned by the court's electronic case management filing system and not those assigned by the parties.

[2] Plaintiff also names the City of Antioch as a Defendant in this action, but erroneously named it as the "Antioch Police Department" in his amended complaint.  Dkt. 15 at 1; Dkt. 20.

[3] The record indicates the mask was a face mask similar to those used during the COVID-19 pandemic.  *See* Inabnett Decl., Ex. B (Video of Plaintiff's Interview) at 6:07:00.

[4] The allegations in the original and amended complaint are similar with small variances.  In the original, Plaintiff asserted that Defendants wanted to take a photograph of him in the mask to "try[] to make [him] become a suspect in a crime" in which he had no involvement.  In the

him to wear it, using excessive force against him in the process. *Id.* at 4. Plaintiff further claims that Inabnett failed to intervene to stop the use of excessive force. *Id.* Plaintiff also alleges a state law claim of negligence against Stenger for failing to prevent a "safety issue." *Id.*

On April 7, 2022, the court found that Plaintiff's complaint stated a cognizable Fourth Amendment claim[5] against Defendants. Dkt. 8 at 2-3. The court also exercised supplemental jurisdiction over the negligence claim. *Id.* at 3.

On August 23, 2022, the court granted Plaintiff leave to file an amended complaint, and found that, liberally construed, the amended complaint stated: (1) a cognizable Fourth Amendment claim against Stenger, Mellone, and Bledsoe for the alleged use of excessive force, and against Inabnett for failing to intervene; and (2) a supplemental state law claim for negligence, as against Stenger. Dkt. 29.

This action has been assigned to the undersigned magistrate judge. Pursuant to 28 U.S.C. § 636(c), with written consent of all parties, a magistrate judge may conduct all proceedings in a case, including entry of judgment. Appeal will be directly to the United States Court of Appeals for the Ninth Circuit. *See* 28 U.S.C. § 636(c)(3). All parties have consented to magistrate judge jurisdiction in this matter. Dkt. 6; Dkt. 23 at 2.

Now pending before the court are Defendants' motion for summary judgment (opposed by Plaintiff), and Plaintiff's cross-motion for summary judgment (opposed by Defendants). Dkts. 31, 37. Defendants argue as follows: (1) the undisputed material facts do not support an excessive force claim against any of them; (2) they are entitled to qualified immunity; (3) the excessive force claim is barred by collateral estoppel; (4) Stenger was not negligent in "failing to prevent a safety issue"; and (5) no evidence exists to support punitive damages. Dkt. 31. In his motion, Plaintiff argues that "there is no factual dispute between [him] and [Defendants] in regards to [their] violation of [his] Fourth Amendment Constitutional Right." Dkt. 37. For the reasons set out

---

amended complaint, Plaintiff alleges that Defendants wanted him to wear a mask after he told them he was willing to take a lie detector test. *Compare* Dkt. 1 at 3 *with* Dkt. 15 at 2-3.

[5] At the time of the incident, Plaintiff was a post-arrest, pre-arraignment detainee. Therefore, Defendants' alleged use of force is governed by the Fourth Amendment. *See Pierce v. Multnomah Cnty., Or.*, 76 F.3d 1032, 1043 (9th Cir. 1996).

United States District Court
Northern District of California

below, the Court DENIES Defendants' Motion for Summary Judgment, and DENIES Plaintiff's

Cross-Motion for Summary Judgment.  Dkts. 31, 37.

## II.    FACTUAL BACKGROUND

### A.    The Parties

At the time of this incident, Plaintiff was in the custody of APD and was being interviewed

about his role and his brother's role in a crime that had been committed in Antioch.  *See* Inabnett

Decl., Ex. B (Video of Plaintiff's Interview).  Inabnett handled the majority of the interview, with

Stenger, Mellone, and Bledsoe all participating at various times.  *Id.*; *see* Inabnett Decl., Ex. H

(Labeled Photo of Interview).  All Defendants were present during the incident in question, and all

are employed by the City of Antioch.  *Id.*

### B.    Circumstances Around the Alleged Excessive Force Incident[6]

Unless otherwise noted, Plaintiff's and Defendants' versions of the facts are generally

similar in their recollection of the interview and are mostly in line with the videotape recording of

the interview.

APD arrested Plaintiff on October 29, 2020, and Inabnett interviewed him on the same

day.  Inabnett Decl. ¶ 15.  Plaintiff was placed in an interview room with an audio/visual recording

device, and the interview was recorded.  *Id.* at ¶ 16.  He wore civilian clothes and was provided

with water and food.  *Id.* at ¶ 17; *see* Inabnett Decl., Ex. B.  Plaintiff waived his Fifth Amendment

rights under *Miranda* and admitted to being on active probation for petty theft.  Inabnett Decl. at

¶ 18.  The videotape recording has been submitted as part of the record, and it shows that the

interview was over six hours long, including breaks.  Inabnett Decl., Ex. B.

---

[6] Defendants and Plaintiff both filed Requests for Judicial Notice ("RJNs").  Dkts. 31-2 at
1-2, 37 at 2.  A court may take judicial notice of court filings and other matters of public record.
*See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).
Defendants' RJN is GRANTED in part and DENIED in part.  Dkt. 31-2 at 1-2.  It is GRANTED
with respect to Plaintiff's criminal complaint and information, as well as the transcript of the
hearing on the motion to suppress.  Dkt. 31-2, Exs. A-C.  It is DENIED with respect to Plaintiff's
brother's criminal complaint and information (dkt. 31-2, Exs. A, B) because those documents are
not relevant to this case.  *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007).  Plaintiff
asks the court to take judicial notice of "an ongoing investigation of the [APD] by the [FBI] of
corruption since March 2022" to help corroborate his motion.  Dkt. 37 at 2.  This request is
DENIED because the current action involves an incident that dates back to October 2020 (well
before March 2022), and the investigation is not relevant to this case.  *See Bias*, 508 F.3d at 1225.

Inabnett initially used a ruse, claiming he was just investigating credit card fraud, and showed Plaintiff Antioch Bank of America ATM surveillance photographs of a suspect using a stolen ATM card. *Id.* at ¶ 19. Inabnett states that Plaintiff's calm demeanor changed when he introduced the topic of a sexual assault. *Id.* at ¶ 18. He further stated that Plaintiff became more talkative and longwinded and was loud, often yelling. *Id.* Inabnett "bluntly told Plaintiff that he and [his brother] are the suspects in the ATM photographs." *Id.* at ¶ 19. Plaintiff denied this, claiming he had never been to Antioch and was at his Stockton home with his wife and child on the night of the incident. *Id.* Inabnett confronted Plaintiff with cellphone records that placed Plaintiff and his brother at the scene of the sexual assault/robbery (which is how they would have allegedly obtained the stolen ATM cards), but Plaintiff said the cellphone number belonged to his wife. *Id.* at ¶ 20. Inabnett informed Plaintiff that DNA from the victim of the attack matched his and his brother's DNAs. *Id.* According to Inabnett, Plaintiff did not appear to understand the gravity of this evidence and, instead, focused on the ATM surveillance photographs. *Id.*

After over five hours, Plaintiff continued to deny responsibility for his role in the attack. *Id.* at ¶ 21. Inabnett obtained a DNA kit and informed Plaintiff that the officers possessed a signed warrant for a DNA sample, which Plaintiff "willingly provided." *Id.* At this point of the interview, each officer (Inabnett, Mellone, Bledsoe, and Stenger) had spoken to or interacted with Plaintiff. *Id.* at ¶ 22.

Before ending the interview, Defendants attempted to photograph Plaintiff with a black mask on. *Id.* at ¶ 23. After obtaining a camera and a black mask, Inabnett asked Plaintiff's permission to take a photo of him with the mask on.[7] *See* Inabnett Decl. ¶ 24; Dkts. 1, 15, 37.

---

[7] The parties' versions differ here, although in ways that have no bearing on the excessive force analysis. According to the amended complaint, Inabnett asked if Plaintiff would take a lie detector test, and Plaintiff agreed. Dkt. 15 at 2. Inabnett then left the room for approximately five minutes and returned with a black mask. *Id.* Plaintiff asked what the mask was for, believing Inabnett had left to get the lie detector. *Id.* Plaintiff said he would take the test but would not put on the mask. *Id.* The court notes that the video neither shows a lie detector being discussed in the moments before Inabnett left to retrieve the mask and camera, nor once he returned with the items. *See* Inabnett Decl., Ex. B. Plaintiff's version of the facts relating to the lie detector test cannot be verified by video evidence, and such facts are also omitted from his original complaint (dkt. 1). Defendants do not mention a lie detector test in either their motion for summary judgment or Inabnett's declaration. Dkts. 31, 31-4. Instead, Defendants state the photo was taken to compare Plaintiff's likeness to the suspect in the ATM surveillance photographs. Inabnett Decl. ¶ 23.

United States District Court
Northern District of California

Plaintiff declined, stating, "I'm not going to do all that." Inabnett Decl., Ex. B at 5:32:34. They went back and forth for several minutes over whether Plaintiff would wear the mask and be photographed. *Id.* at 5:33:00-5:39:00. Plaintiff then yelled, "I'm ready to go!" *Id.* at 5:40:04. The detectives were unsuccessful in gaining Plaintiff's consent to put on the mask. *Id.* at 5:39:00-5:45:00. Mellone told Plaintiff, "We're getting these pictures. It doesn't matter what you do." *Id.* at 5:47:40.

This back and forth argument over the mask continued for approximately five minutes, and Plaintiff still refused to consent. *Id.* at 5:45:50-5:50:50. Plaintiff demanded the officers show him something "in black and white" saying that he had to consent to the photo. *Id.* at 5:47:20. When the officers could not do so, Plaintiff then said "I'm done talking." *Id.* at 5:49:35. Stenger then read the following from a piece of paper,

> Lamar, you do not have the right to refuse to participate in photographs . . . if you do refuse, your decision to do so might be used against you in court as proof that you are in fact guilty of the crime for which you have been arrested and that you knew the photograph would positively identify you as the perpetrator. Having these consequences in mind, do you still refuse to participate in the photographs?

*Id.* at 6:02:52-6:03:24. Plaintiff responded, "Yes sir." *Id.* at 6:03:25. Stenger then warned Plaintiff: "They're still going to force you. Go get the cuffs." *Id.* at 6:03:27. The four officers gathered in the small interview room and applied latex gloves while Plaintiff had his head down on the table in the other interview room. Inabnett Decl. ¶ 26. They told Plaintiff to put his hands behind his back, and Plaintiff complied. *Id.* Bledsoe and Stenger put handcuffs on Plaintiff. *Id.* Plaintiff never complained the cuffs were too tight or were causing any discomfort. *Id.*

Stenger then tried to put the hoodie section of Plaintiff's sweatshirt on Plaintiff's head to match the suspect in the ATM's image. Inabnett Decl., Ex. A, Ex. B at 6:07:00. According to Defendants, Plaintiff resisted by moving his head. *Id.* Inabnett states that Plaintiff "continued to resist by pushing himself into the corner against the wall." Inabnett Decl. ¶ 27. Plaintiff denies

---

Plaintiff's cross-motion for summary judgment, which can be construed as an unverified opposition, states the photos were taken "in order to show the photograph to an alleged victim." Dkt. 37 at 1.

United States District Court
Northern District of California

United States District Court
Northern District of California

this, stressing that he was standing and his hands were handcuffed behind his back.  Dkt. 15 at 3.

The officers then warned Plaintiff that they were "putting the mask on," but ordered Plaintiff "not to resist [them]" because they "d[id] not want anyone to get hurt."  Inabnett Decl., Ex. B at 6:07:00-6:07:13.  Bledsoe held Plaintiff's right hand, which was secured in handcuffs.  *Id.* Inabnett, who held the mask, then moved closer to Plaintiff's face.  *Id.* at 6:07:14.  Inabnett and Mellone each held one side of the mask and unsuccessfully attempted to put it on Plaintiff's face. *Id.* at 6:07:20.  Plaintiff moved his upper body and head towards his knees.  *Id.*  Plaintiff said, "Can y'all watch out please?"  *Id.* at 6:07:22.  The officers pushed his body up against the chair and again tried to secure the mask onto Plaintiff's face.  *Id.*  Plaintiff then pushed himself into a corner.  *Id.* at 6:07:26.  Plaintiff asked, "Y'all doing this on camera?"  *Id.*  Mellone replied, "Yeah. Do not resist."  *Id.*  One of the other detectives said, "So they know that we're legal."  *Id.*

Each officer, excluding Inabnett, then used their hands to hold Plaintiff in place while Inabnett attempted to put the mask on Plaintiff.  *Id.*  Inabnett used a camera to take a photo while the three other Defendants held Plaintiff in place.  Inabnett Decl. ¶ 29.  Plaintiff said, "You're poking me!  Can you let go please?  God damn."  Inabnett Decl., Ex. B at 6:07:43.  Inabnett moved closer and photographed Plaintiff's face.  *Id.*  Plaintiff exclaimed, "He got my neck!" and one of the officers replied, "No one has anything on your neck.  Stop!"  *Id.* at 6:07:46.  Bledsoe was in between Stenger and Mellone.  *Id.*  Stenger was on Plaintiff's right side, helping hold him down.  *Id.*  While the video is unclear due to the camera angle, it appears to show Mellone's hand below Plaintiff's chin area near his neck, and Stenger trying to pull the hoodie up over Plaintiff's head.  *Id.*  Bledsoe's hands are not visible, but his positioning suggests that he had his hands somewhere on Plaintiff's arms or shoulder area, restraining him.  *Id.*

Plaintiff's version of these particular events differ significantly.  In his amended complaint, Plaintiff alleges that when officers put on the mask, Stenger stood behind Plaintiff, "choking him in a death lock."[8]  Dkt. 15 at 4.  Plaintiff adds as follows: "Det. Mellone was on one side of [Plaintiff] and Det. Bledsoe was on the other side holding [Plaintiff] down while Det. Inabnett was

---

[8] The court notes that Plaintiff's cross-motion for summary judgment (construed as his unverified opposition) describes it as a "carotid artery choke."  Dkt. 37 at 2.

forcing the black mask on [Plaintiff's] face." *Id.* at 3. As explained above, Defendants dispute this fact. Inabnett states the officers used "minimal force to secure Plaintiff in place." Inabnett Decl. ¶ 28. None of the other officers submitted declarations for these motions.

The video evidence does not provide a clear view of what exactly transpired during the moment of the alleged choking incident. In the video, one can see an individual's hand in blue gloves, which appears to be Stenger's, around the right side of the base of Plaintiff's head, but it is unclear as to the exact placement because the camera's position and the positioning of the parties obstructs the view of Plaintiff's head and neck. Inabnett Decl., Ex. B at 6:07:30-40. From the video it appears that Mellone had his hand below Plaintiff's chin, near the neck region during the relevant time. *Id.* at 6:07:30-6:08:30. The parties' conflicting claims -- namely, Plaintiff's statement that he was being choked and the officers' denial of that statement -- cannot be confirmed by the video evidence. *See* Inabnett Decl., Ex. B.

As described further below, the officers made two attempts to photograph Plaintiff, first with a mask and then with a neck gaiter. Partway through the officers' first attempt to photograph Plaintiff, Mellone shifted position, which blocked the camera's view of Plaintiff. *Id.* at 6:08:00. One of the officers said, "this is all going to be used against you in court," while the other three officers continued to hold Plaintiff down. *Id.* at 6:08:04. Plaintiff exclaimed, "Look what y'all doin' to me!" *Id.* at 6:08:07. Inabnett took more photographs.[9] *Id.* One of the other officers stated "Stop resisting! Stop bro! Don't do that." *Id.* at 6:08:15. According to Inabnett, the warning was made because Plaintiff was "attempt[ing] to eat the mask or possibly bite the officers," and Inabnett was also "concerned the plaintiff may bite (or otherwise harm) himself."[10] Inabnett Decl. ¶¶ 30, 31. The officers then discussed getting a neck gaiter to use instead of a mask, and they let go of Plaintiff. *Id.* at ¶ 31.

According to Defendants, they made a plan to use a black neck gaiter instead of a face

---

[9] The record does not include any photographs of Plaintiff with the black face mask, even though the video shows at least one photo was taken. Inabnett Decl., Ex. B at 6:08:06.

[10] The amended complaint (dkt. 15) has no mention of biting or chewing, and no other officer has submitted a declaration attesting to this. The video evidence is inconclusive as to whether Plaintiff was trying to bite the officers. Inabnett Decl., Ex. B at 6:07:30-6:08:30.

United States District Court
Northern District of California

mask for three reasons. *Id.* First, they believed it would be easier to apply than the mask. *Id.* Second, they believed it would be harder for Plaintiff to chew through. *Id.* Third, they believed it would more closely match the suspect in the photo of the ATM footage, who wore a black neck gaiter as opposed to a mask. *Id.*; *see* Inabnett Decl., Ex. A (Labeled Photo of ATM footage). Inabnett left the room to retrieve the neck gaiter while the other officers remained with Plaintiff. Inabnett Decl. at ¶ 32. While they waited, Bledsoe asked Plaintiff to calm down. *Id.* at 6:08:46. Mellone told him, "We're not leaving here 'till we get these pictures so you can do all this if you want. It's not going to look good." *Id.*

Inabnett returned with the black neck gaiter, moved towards Plaintiff, and placed it over his head. *Id.* at 6:09:17. He told Plaintiff to relax. *Id.* At this time, Stenger was in the corner near the door, Mellone held the camera to take pictures of Plaintiff, and Bledsoe was holding Plaintiff's body in place. *Id.* at 6:09:30-6:10:10. Defendants claim Plaintiff continued to tense and resist the taking of photographs. *Id.* at 6:09:40. Mellone snapped several pictures of Plaintiff wearing the neck gaiter. Inabnett Decl. ¶ 34; Inabnett Decl., Exs. C-G (Photos of Plaintiff With Black Neck Gaiter As Mask). Once Mellone finished, Inabnett removed the black neck gaiter. Inabnett Decl., Ex. B at 6:10:07. Plaintiff asked, "There you happy now? Shit! I could have did it my god damn self." *Id.* Inabnett responded, "Then why didn't you?" and Plaintiff responded, "I told you that I was going to put the mask on." *Id.* Following a brief back and forth, the officers left the room. *Id.* In his amended complaint, Plaintiff neither mentions the neck gaiter nor raises any issues of excessive force used by Defendants to put on the neck gaiter as a mask. *See* Dkt. 15.

After a couple of minutes of being alone in the interview room the video shows that Plaintiff said, "My mouth hurt on the side." *Id.* at 6:13:10. He continued to complain about his mouth pain until Inabnett responded to check on Plaintiff. *Id.* at 6:14:38. Plaintiff told Inabnett, "The side of my mouth hurt." *Id.* at 6:14:44. Plaintiff stated that his mouth hurt because the officers were pushing his face in. *Id.* at 6:14:54. Inabnett then left the room. *Id.* at 6:15:15.

## C.    Plaintiff's Alleged Injuries

Plaintiff claims that this incident caused him "pain, suffering, physical injury [and] emotional distress." Dkt. 15 at 4. He states that he felt "like [he] was about to die" while he was

being choked.  *Id.* at 3.  Plaintiff has nightmares about the incident and "wake[s] up in cold sweats."  *Id.*  He claims to have suffered "pain in [his] throat [and] it was hard for [him] to swallow."  *Id.*  After he was booked at the jail, Plaintiff saw the nurse about his throat and spoke with a psychiatrist about these problems.  *Id.*

### D.    Motion to Suppress in Underlying State Court Criminal Case

On August 11, 2022, Contra Costa County Superior Court Judge David E. Goldstein presided over a motion to suppress filed by Plaintiff's defense counsel in his criminal case.  *See* Dkt. 31-2, Ex. C (Mot. to Suppress Transcript).  Defense counsel argued that the photographs of Plaintiff wearing the black mask should be excluded.  *Id.* at 40:16-22.  Defense counsel argued the officers' actions constituted a warrantless search, was "unconscionable," and violated due process.  *Id.* at 40:16-22, 41:23-25.  He cited *Rochin v. California*, 342 U.S. 165, 209 (1952), arguing that "forcing a face mask onto a person is a violation of due process because it shocks the conscience."  *Id.* at 41:26-42:5.  He further argued as follows: "You can't have government agencies . . . forcing people into positions that can get them seriously injured, if not killed.  We're talking about the head.  You have large officers surrounding his head with blue gloves and forcing it into a position for a photograph.  That's shocking."  *Id.* at 42:6-11.

The state superior court agreed with defense counsel that "in theory" "the photographs are subject to a suppression motion."  *Id.* at 49:12-13.  The court pointed out that officers can take suspects' photograph as part of a standard booking.  *Id.* at 47:27-48:6.  The court added as follows: "[police] can't beat the hell out of a defendant in order to submit to a photograph.  They can't use unnecessary or excessive force to get a defendant to submit to a cheek swab or to the taking of a photo or submitting to a search."  *Id.* at 48:16-21.  However, the court considered the evidence presented and found that the force the officers' used to take Plaintiff's photographs "was reasonable and necessary and does not shock the conscience."  *Id.* at 51:16-18.  The court denied the motion to suppress "because the ultimate force that was used was reasonable and necessary to fulfill a valid law enforcement purpose and investigation in a setting where [Plaintiff's] expectation of privacy, although not nonexistent, was extremely limited and it was done in a manner that did not, in fact, hurt [Plaintiff] nor was it designed to do so."  *Id.* at 52:14-22.

9

United States District Court
Northern District of California

### III. MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT

#### A. Standard of Review for Summary Judgment

"[S]ummary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (quoting Fed. Rule Civ. Proc. 56(c)) (citing cases). "The burden of establishing the nonexistence of a 'genuine issue' is on the party moving for summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). The movant must inform the district court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.

Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. *Id.* at 324. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *See Anderson*, 477 U.S. at 322-23. All reasonable inferences are to be drawn in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

When the parties file cross-motions for summary judgment, the district court must consider all of the evidence submitted in support of both motions to evaluate whether a genuine issue of material fact exists precluding summary judgment for either party. *The Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1135 (9th Cir. 2001).

A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002). In support of Defendants' motion for summary judgment, Defendants have presented video evidence

(Inabnett Decl., Ex. B), Inabnett 's declaration (Dkt. 31-4), various other photo exhibits (Inabnett Decl., Exs. A, C-H), and Plaintiff's criminal complaint/information as well as the motion to suppress hearing transcript (Dkt. 31-2, Exs. A-C).  Meanwhile, Plaintiff's verified amended complaint (dkt. 15) may be used as an opposing affidavit under Rule 56, to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence.  *Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).  Even if Plaintiff's cross-motion for summary judgment could also be construed as an opposition, the court notes that it is not verified because he failed to sign it under penalty of perjury.  *See* Dkt. 37.

### B.   Excessive Force Claim

#### 1.   Applicable Law

Excessive use of force violates a pretrial detainee's federal constitutional rights, and the source of this right differs depending on whether the person is a suspect at large or an arrestee who is pre- or post-arraignment at the time of the alleged violation.

Excessive force claims which arise in the context of an arrest or investigatory stop of a free citizen are analyzed under the Fourth Amendment reasonableness standard.  *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *Forrester v. City of San Diego*, 25 F.3d 804, 806 (9th Cir. 1994).  The Fourth Amendment reasonableness standard also applies to allegations of use of excessive force against an arrestee while detained in custody post-arrest but pre-arraignment.  *See Pierce*, 76 F.3d at 1043.  A post-arraignment pretrial detainee is protected from the use of excessive force by the Due Process Clause of Fourteenth Amendment.  *See Graham*, 490 U.S. at 395 n.10.

To prove an excessive force claim under section 1983, an arrestee who is pre-arraignment such as Plaintiff, must show that the "force purposely or knowingly used against him was objectively unreasonable."  *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).  "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."  *Id.*  "A court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e]

11

judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. at 540, 547 (1979)). Because the *Kingsley* standard for excessive force claims by pretrial detainees is purely objective, it does not matter whether the defendant understood that the force used was excessive or intended it to be excessive. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).

A court "must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Kingsley*, 576 U.S. at 397 (quoting *Bell*, 441 U.S. at 540, 547) (alterations in original). In *Kingsley*, the Supreme Court listed certain factors to "illustrate the types of objective circumstances potentially relevant to a determination of excessive force," such as: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

Generally, "officers can be held liable for failing to intercede in situations where excessive force is claimed to be employed by other officers only if 'they had an opportunity to intercede.'" *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022) (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000)) (finding a failure to intervene claim failed because there was no realistic opportunity for officers to prevent a rapidly unfolding shooting). Officers can also be liable for excessive force on a theory of integral participation "only if they participate 'in some meaningful way' in the specific actions that constituted a violation." *Hughes*, 31 F.4th at 1223 (quoting *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004)).

### 2. Analysis of Excessive Force Claim

As mentioned above, the analysis of Plaintiff's Fourth Amendment claim of excessive force turns on the reasonableness of Defendants' actions under the circumstances. *See Pierce*, 76 F.3d at 1043. Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: (1) the relationship between the amount of force used and the

need for the use of force, including consideration of the threat reasonably perceived by the officer, any effort made by the officer to temper/limit the amount of force, and whether the plaintiff was actively resisting; (2) the extent of the plaintiff's injuries; and (3) the severity of the security problem at issue.[11]  *See Kingsley*, 576 U.S. at 397.

> a.  **Relationship Between Need for Use of Force and Amount of Force Used**

The parties have different accounts as to the amount of force used.  Plaintiff claims he was choked while he was being forced to wear a mask, while Defendants claim they used "minimal force to secure Plaintiff in place while [the officer] put the mask on [Plaintiff's] face."  *See* Dkt. 15 at 3; Dkt. 31 at 21:20; Inabnett Decl. ¶ 28.  Plaintiff claims he was not a threat to Defendants because he was handcuffed with his hands behind his back, *see* dkt. 15 at 2, while Defendants claim that Plaintiff was "resisting by moving his head and dropping his bodyweight to avoid being photographed," dkt. 31 at 20:16-17.  Inabnett also claims that Plaintiff "attempted to eat the mask or possibly bite the officers."  Inabnett Decl. ¶ 30.

The court finds that there are material disputes of fact that preclude the granting of either motion for summary judgment.  The video does not provide a clear view as to whether Plaintiff was choked during the process, nor does it show Plaintiff attempting to bite Defendants.  *See* Inabnett Decl., Ex. B.  The video confirms that Plaintiff was handcuffed and surrounded by four officers.  *See id.* at 6:07:46.  A reasonable trier of fact could find that such circumstances would impede Plaintiff's ability to threaten/confront Defendants or their control of the facility.  *See Kingsley,* 576 U.S. at 397 (holding that a legitimate need for force can arise where a reasonable officer would determine that a detainee poses a risk to institutional security).  While the video shows some resistance by Plaintiff, a dispute of fact exists as to whether the use of force by Defendants exceeded what was objectively reasonable.  The parties disagree on these facts, and the camera does not provide an unobstructed view.  *Id.* at 6:07:22-6:08:25.  In addition to the lack

---

[11] The court finds inapplicable Defendants' evaluation of Plaintiff's excessive force claim under *Graham* because the instant action does not involve an arrest or investigatory stop of a free citizen.  *See* Dkt. 31 at 21-24 (citing *Graham*, 490 U.S. at 396-97; *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010); and Ninth Circuit Model Instruction 9.25) (considering various factors in determining whether force used at arrest was reasonable).

of clarity in the video, no photos of Plaintiff with the black face mask exist in the record despite the camera flashing at least once. *See id.* at 6:08:06. As mentioned, the only photos in the record are those of Plaintiff wearing the black gaiter as a mask. *See* Inabnett Decl., Exs. C-G. The court further finds that a question of fact exists as to whether any effort was made by Defendants to temper or to limit the amount of force used. *Kingsley*, 576 U.S. at 397. Specifically, the record shows an alternative existed to putting on the face mask (which seemed difficult to put on and required all four officers to hold down Plaintiff) in the form of a neck gaiter (which more closely matched what the suspect was wearing in the ATM footage, and was readily available and easier to put on). *See* Inabnett Decl. ¶¶ 30-31, Ex. A. The degree of Plaintiff's resistance, whether he posed a legitimate threat to Defendants, whether he interfered with Defendants' need to maintain control of the facility, and whether Defendants made any effort to temper/limit the amount of force used are all material disputes of fact that need to be decided before weighing it against the amount of force used. *See Kingsley*, 576 U.S. at 397. The video shows Plaintiff yelling that Defendants "got [his] neck," and Defendants stating they do not. *Id.* at 6:07:46. The court has taken the following into consideration: the parties' conflicting sworn statements; the camera's obstructed point of view during key moments of the incident in question; and the conversations and confrontations before and after the relevant incident (many of which were omitted from both parties' facts sections). Upon taking the parties' aforementioned evidence into consideration, the court finds a material question of fact exists as to whether Defendants' actions in response to the perceived threat were "objectively unreasonable." *See Kingsley*, 576 U.S. at 397.

### b. Extent of Plaintiff's Injuries

A reasonable juror could find that Plaintiff's injuries, while not major, were not *de minimis*. The video shows that Plaintiff was surrounded by four officers in the interrogation room and that Defendants applied some amount of force in order to put a mask on his face. Plaintiff complained of mouth and throat pain, and asserts that he later consulted with medical specialists about his physical and mental injuries. *Id.*

The court notes that injury and force are not perfectly correlated and minor injuries will not defeat an excessive force claim. *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (inmate who is

1   gratuitously beaten by guards does not lose his ability to pursue excessive force claim merely

2   because he has good fortune to escape without serious injury).  Taking Plaintiff's evidence as true

3   and viewing it in his favor for the purposes of summary judgment, a reasonable juror could

4   determine that Plaintiff's injuries are considerable enough to not be *de minimis*.  *See id.*

5                          **c.  Severity of Security Problem at Issue**

6                   While Defendants provided the court with great detail about the crime for which Plaintiff

7   was arrested, that information is largely irrelevant to the question of the security risk posed by

8   Plaintiff during the incident at issue because he was in police custody, had no weapons, was in

9   handcuffs, and had undergone almost six hours of interrogation at the time of the incident.  *See*

10  Inabnett Decl., Ex. B.  Defendants were not acting in the heat of the moment chasing down a

11  subject, but instead were in a comparatively safe space (an interrogation room) where they were in

12  control of a handcuffed suspect.  *See* Inabnett Decl., Ex. B.  A reasonable trier of fact could find

13  that these circumstances greatly lessened the danger posed by Plaintiff to Defendants.  The limited

14  physical capacity at which Plaintiff was operating due to the restraints would also have limited his

15  ability to disrupt the internal order of the facility, and thus could lead a reasonable trier of fact to

16  question whether he could have contributed to any alleged security problem.  *See id.*

17                  In sum, if believed, Defendants' description of using minimal force necessary to put a

18  mask on a suspect would lead to a conclusion that the force used was not excessive.  If believed,

19  Plaintiff's version of being choked while offering no resistance would lead to a conclusion that the

20  force used was excessive.  Summary judgment is not the place for credibility determinations.  *See*

21  *T.W. Elec. Serv.*, 809 F.2d at 630.  The court could not grant judgment in Defendants' favor

22  without accepting Defendants' version and disbelieving Plaintiff's version of the events that

23  transpired.  Similarly, the court could not grant judgment in Plaintiff's favor without accepting

24  Plaintiff's version and disbelieving Defendants' version.  A reasonable trier of fact must hear both

25  versions and decide whom to believe.  Plaintiff has established a "'genuine issue for trial'"

26  concerning the excessiveness of the force used on him on October 29, 2020 by Stenger, Mellone

27  and Bledsoe.  *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

28

United States District Court
Northern District of California

15

United States District Court
Northern District of California

### 3.   Analysis of Claim Relating to Inabnett's Failure to Intervene

As mentioned above, the court held that the only avenue of liability for Inabnett is a failure to intervene theory. Dkt. 29. However, Defendants claim that Inabnett "cannot be liable under a failure to intervene theory because there was no basis to intervene (i.e., there was no excessive force for which to intervene)." Dkt. 31 at 24 (citing *Boyd*, 374 F.3d at 780 (holding bystander having no role in unlawful conduct has no duty to intervene)). This argument fails because the court has determined that genuine issues of material fact exist as to whether the other Defendants used excessive force.

Furthermore, Defendants argue as follows:

> To the extent the [c]ourt finds that excessive force was used, Inabnett is not liable for two reasons. First, he did not participate "in some meaningful way." *Boyd*, 374 F.3d at 780. [He] merely took photographs of plaintiff. Second, he is entitled to qualified immunity because no precedent clearly established that an officer is expected to intercede under similar circumstances.

*Id.* at 24-25. The court rejects these arguments as well. There are questions of fact as to whether Inabnett participated "in some meaningful way." *Boyd*, 374 F.3d at 780. Inabnett was in the same room during the incident and watched the other three officers during this event. *See* Inabnett Decl. ¶ 35. Inabnett was leading the interview and was also the officer who took Plaintiff's photos. Inabnett was only a few steps away from Plaintiff during the alleged choking. *See* Inabnett Decl., Ex. B. A reasonable juror could determine that these circumstances indicate that Inabnett meaningfully participated in the incident and should have intervened to prevent the use of excessive force.

Over the course of a six-hour interview and the lengthy discussions that Inabnett had with Plaintiff, sufficient evidence exists for a reasonable trier of fact to find that Inabnett had some level of control over the situation. *See* Inabnett Decl., Ex. B. This contrasts with *Cunningham*, where the officers had a very short amount of time and no real opportunity to prevent a rapidly unfolding shooting. *See* 229 F.3d at 1229-30. Accordingly, as to the failure to intervene claim against Inabnett, neither Defendants nor Plaintiff are entitled to summary judgment.

### 4.   Qualified Immunity

Defendants argue in the alternative they are entitled to qualified immunity. The defense of

1   qualified immunity protects "government officials . . . from liability for civil damages insofar as

2   their conduct does not violate clearly established statutory or constitutional rights of which a

3   reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To

4   determine whether an individual official is entitled to qualified immunity, the court must

5   determine whether (1) the official violated a constitutional right and (2) the constitutional right

6   was clearly established such that it would be clear to a reasonable officer that his conduct was

7   unlawful in the particular situation.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

8          Viewing the evidence in a light most favorable to Plaintiff, the facts presented could

9   reasonably support a showing that Defendants used excessive force in violation of Plaintiff's

10   constitutional rights.

11          As to the second prong of qualified immunity, Defendants do not dispute that the right to

12   be free from excessive force was clearly established at the time of the incident, but they instead

13   argue that their conduct was reasonable under the circumstances.  Whether a prison official acted

14   reasonably is a mixed question of law and fact:  "It involves an objective test of whether a

15   reasonable official could have believed that his conduct was lawful in light of what he knew and

16   the action he took.  If there are genuine issues of material fact in issue relating to the historical

17   facts of what the official knew or what he did, it is clear that these are questions of fact for the jury

18   to determine."  *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir.

19   1995).  Construing the evidence in a light most favorable to Plaintiff, a reasonable officer in

20   Defendants' position could not have believed that their actions—holding Plaintiff down and

21   choking him when forcing him to wear a mask—were reasonable when faced with a handcuffed

22   detainee, who presented little danger to Defendants.  Dkt. 15 at 3.  The court further finds that,

23   insofar as the parties' version of the underlying facts are disputed, genuine issues of material fact

24   exist which preclude a finding that Defendants' conduct was objectively reasonable.  Accordingly,

25   Stenger, Mellone and Bledsoe are not entitled to qualified immunity as to the excessive force

26   claim against them.

27          Inabnett argues that even if it is assumed that a constitutional violation occurred, he is

28   entitled to qualified immunity because no precedent clearly established that an officer is expected

United States District Court
Northern District of California

1   to intervene under similar circumstances.  Dkt. 31 at 25.  The court finds that genuine issues of

2   material fact exist which preclude such a finding.  For example, Plaintiff disputes Defendants'

3   allegation that they used minimal force in putting the mask on him.  Dkt. 15 at 3.  The court has

4   also found that genuine issues of material fact exist as to whether the other named Defendants

5   used excessive force, and therefore Inabnett may have had a duty to intervene so long as he had an

6   opportunity to do so.  *See supra* DISCUSSION Part III.B.3.  For these reasons, Inabnett is not

7   entitled to qualified immunity as to the failure to intervene claim against him.

8           **5.  Summary**

9         In sum, based on the record evidence, the court finds that genuine issues of material fact

10  exist and that no party is entitled to judgment as a matter of law.  With respect to Plaintiff's cross-

11  motion for summary judgment, when the resolution of disputed facts and the drawing of

12  inferences are made in Defendants' favor, a reasonable jury could properly find that the individual

13  officers' actions were objectively reasonable.  *Kingsley*, 576 U.S. at 397.  Similarly, with respect

14  to Defendants' motion for summary judgment, when the resolution of disputed facts and the

15  drawing of inferences are made in Plaintiff's favor, a jury could properly find that there are

16  genuine disputes of material fact when considering the nature of video evidence, Defendants' and

17  Plaintiff's actions at the time, and whether a reasonable person would find Defendants' actions

18  objectively unreasonable.  *See id.*  Thus, summary judgment is not warranted in favor of either

19  party as to the excessive force claim.  *See Celotex Corp.*, 477 U.S. at 324.  Similarly, summary

20  judgment is not warranted in favor of either party with respect to the failure to intervene claim

21  against Inabnett.  In addition, Defendants are not entitled to qualified immunity as to these claims.

22        Accordingly, Defendants' motion for summary judgment and Plaintiff's cross-motion for

23  summary judgment with respect to the excessive force and failure to intervene claims are

24  DENIED.[12]

25  _____

26      [12] The court need not elaborate on the final ground for which Defendants' motion for

27  summary judgment is based: collateral estoppel.  Dkt. 31 at 26-27.  Contrary to Defendants'
    claims, the issues presented before this federal court and those in state court (relating to the motion
    to suppress) are *not* identical in substance or in desired relief.  *See Garrett v. City and County of*

28  *San Francisco*, 818 F.2d 1515, 1520 (9th Cir. 1987) ("In California, collateral estoppel applies
    when: (1) the issue decided in the prior action is identical to the issue presented in the second

### C.    Municipal Liability Claim

Local governments, such as the City of Antioch, are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).  To impose municipal liability under section 1983 a plaintiff must show "(1) that he possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation."  *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotation marks omitted).  Liberally construed, the court finds that the amended complaint states a cognizable claim for municipal liability against the City of Antioch.[13]  Dkt. 15.

In his cross-motion for summary judgment, Plaintiff has neither argued nor brought forth facts to satisfy their burden of proof of showing that the City of Antioch had a municipal custom or policy condoning or encouraging the use of excessive force or a pervasive failure to train or supervise that was the moving force behind the constitutional violations.  *See* Dkt. 37.  Plaintiff has submitted no evidence which demonstrates, as a matter of law, a causal connection between the City of Antioch and the actions of the officers, or that the municipal Defendants were the moving force that caused his injuries.  *Id.*  Therefore, Plaintiff's cross-motion for summary judgment as to the City of Antioch is DENIED.

Similarly, Defendants have pleaded no facts nor have they responded to Plaintiff's allegation of municipal liability in their motion for summary judgment.  *See* Dkt. 31.  Accordingly, Defendants' motion for summary judgment with regards to the municipal liability claim against the City of Antioch is also DENIED.

---

action; (2) there was a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication.").  Therefore, the court DENIES Defendants' motion for summary judgment based on the ground of collateral estoppel.

[13] The court inadvertently left out the City of Antioch as a named Defendant when serving the complaint, *see* Dkt. 8, but it now finds that Plaintiff has stated a cognizable municipal liability claim, *see* Dkt. 15.  In any event, the Clerk of the Court correctly served this Defendant (dkt. 10), and as a result the City of Antioch has since filed a waiver of service (dkt. 20) and joined the other Defendants in their pending motion for summary judgment (dkt. 31).

United States District Court
Northern District of California

### D.  State Law Negligence Claim

In his amended complaint, Plaintiff claims that Stenger is liable for negligence for "not preventing a safety issue." Dkt. 15 at ¶ 16.  As discussed, Plaintiff's Fourth Amendment excessive force claim remains pending.  Accordingly, the court will retain supplemental jurisdiction over Plaintiff's pending state law claim.  *See* 28 U.S.C. § 1367(a) ("[D]istrict courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").  The negligence claim arises from the same series of events during the interview between Plaintiff and Defendants and is to be decided on the same operative facts. *See id.*  Accordingly, summary judgment is not warranted as to the negligence claim.

### E.  Claim of Punitive Damages

Punitive damages may be awarded in a section 1983 suit "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Defendants argue that Plaintiff is not entitled to punitive damages because Plaintiff has not demonstrated the type of evil motive or intent, or reckless and callous indifference needed for such damages.  Dkt. 31 at 27-28.  The court disagrees.  Viewing the evidence in the light most favorable to Plaintiff and if he is believed, a reasonable trier of fact could find that Defendants used excessive force to hold him down while he was handcuffed to a chair and choked him to gain a photograph after a six-hour interrogation session.  *See* Inabnett Decl., Ex. B; *see also* Dkt. 15 at 2-3.  Moreover, Plaintiff's status as a "dangerous felon suspected of a brutal crime" as alleged by Defendants, *see* Dkt. 31 at 28, is irrelevant as to whether Plaintiff's civil rights were recklessly or callously violated by Defendants' actions.  Thus, Defendants fail to show that they are entitled to a ruling that punitive damages are inappropriate on these facts for purposes of summary judgment. There are sufficient alleged facts for which the standard for punitive damages may be found to exist by a reasonable trier of fact, and thus punitive damages should not be denied without reaching the merits of Plaintiff's claims.

United States District Court
Northern District of California

## IV.   REFERRAL TO *PRO SE* PRISONER SETTLEMENT PROGRAM

The court has not granted summary judgment on Plaintiff's pending claims.  This case appears a good candidate for the court's *Pro Se* Prisoner Settlement Program.

Good cause appearing therefor, this case is now referred to Magistrate Judge Robert M. Illman for settlement proceedings pursuant to the *Pro Se* Prisoner Settlement Program.  The proceedings will take place within **one hundred twenty days** of the date this order is filed. Magistrate Judge Illman will coordinate a time and date for settlement proceedings with all interested parties and/or their representatives and, within five days after the conclusion of the proceedings, file with the court a report for the prisoner settlement proceedings.

From time to time, prisoner-plaintiffs have refused to participate in settlement proceedings. Although the court assumes that will not occur in this case, the court wants to make clear the consequences if it does.  Judicial resources are consumed preparing for settlement conferences, and those resources are wasted when a scheduled conference does not proceed.  To avoid that happening, Plaintiff is now specifically ordered to attend and participate in the settlement conference proceedings.  He does not have to reach a settlement or other resolution of his claims, but he absolutely must attend and participate in all the settlement conference proceedings.  The conference may be set up so that he will appear in person, by videoconference or by telephone— and he must attend whatever format Magistrate Judge Illman chooses.

Plaintiff is cautioned that he may be sanctioned for failure to comply with an order to participate in a settlement conference, and such sanctions may include dismissal of part or all of the action.  *See* Fed. R. Civ. P. 16(a), (f), and 41(b).

## V.   MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has filed a motion for appointment of counsel.  Dkt. 44.  Plaintiff requests that the court appoint counsel because he is unable to afford counsel, the issues presented are complex, he believes a lawyer would better allow him to cross-examine and present evidence, he has limited law library access, and he cannot effectively litigate his case.  *Id.* at 1.  However, there is no constitutional right to counsel in a civil case.  *Lassiter v. Dep't of Social Services*, 452 U.S. 18, 25 (1981).  28 U.S.C. § 1915 confers on a district court only the power to "request" that counsel

represent a litigant who is proceeding in forma pauperis.  28 U.S.C. § 1915(e)(1).  This does not give the courts the power to make "coercive appointments of counsel."  *Mallard v. United States Dist. Court*, 490 U.S. 296, 310 (1989).

The court may ask counsel to represent an indigent litigant under section 1915 only in "exceptional circumstances," the determination of which requires an evaluation of both (1) the likelihood of success on the merits and (2) the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved.  See *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997);  *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991);  *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).  Both of these factors must be viewed together before reaching a decision on a request for counsel under section 1915.  *See id*.  Neither the need for discovery, nor the fact that the *pro se* litigant would be better served with the assistance of counsel, necessarily qualify the issues involved as complex.  See *Rand*, 113 F.3d at 1525 (where plaintiff's pursuit of discovery was comprehensive and focused and his papers were generally articulate and organized, district court did not abuse discretion in denying request for counsel).

Here, the court finds that Plaintiff has aptly presented his claims, he has successfully presented various arguments in his cross-motion for summary judgment, and the issues presented in Defendants' motion for summary judgment are straightforward.  Therefore, appointment of counsel is not necessary at this time.  Accordingly, Plaintiff's motion for appointment of counsel is DENIED without prejudice to renewing if settlement proceedings are unsuccessful and this case is scheduled for trial.  Dkt. 44.

## VI.  CONCLUSION

For the foregoing reasons, the court orders as follows:

1.      Defendants' RJN (dkt. 31-2 at 1-2) is GRANTED in part and DENIED in part, and Plaintiff's RJN (dkt. 37 at 2) is DENIED.  *See supra* fn. 6.

2.      The Court DENIES Defendants' motion for summary judgment and DENIES Plaintiff's cross-motion for summary judgment.  Dkts. 31, 37.

3.      Pursuant to Local Rule 72-1, this matter is referred to Magistrate Judge Illman for the purposes of settlement.  The parties will be advised of the date, time and place of the next

United States District Court
Northern District of California

appearance by notice from Magistrate Judge Illman.  Plaintiff must attend all conferences scheduled by Magistrate Judge Illman.  Failure to attend even one conference, or a failure to comply with Magistrate Judge Illman's instructions and orders in every respect, will result in the dismissal of this action with prejudice pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute.  The clerk shall forward a copy of this order to all parties and to Magistrate Judge Illman, and terminate all pending motions.  This action is STAYED until further order of this court.

4.      The clerk shall ADMINISTRATIVELY CLOSE the file.

5.      If this matter does not settle, then the court will reopen this case and it will proceed to trial.

6.      Plaintiff's motion for appointment of counsel is DENIED without prejudice to renewing if settlement proceedings are unsuccessful and this case is scheduled for trial.  Dkt. 44.

7.      This Order terminates Docket Nos. 31 and 37.

IT IS SO ORDERED.

Dated:  August 15, 2023

_____
DONNA M. RYU
Chief Magistrate Judge